UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JACKIE MILAZZO, JR.,

    Plaintiff,

v.                                          Case No. 2:21-cv-550-JLB-MRM

THE FIRST LIBERTY INSURANCE
CORPORATION and LIBERTY
MUTUAL INSURANCE COMPANY,

    Defendants.
_____/

## ORDER

Plaintiff Jackie Milazzo, Jr. purchased property insurance from Defendant First Liberty Insurance Corporation ("First Liberty"). Contrary to alleged representations by unnamed agents of Defendant Liberty Mutual Insurance Company ("Liberty Mutual"), the insurance policy did not provide coverage for the property's roof. Following damage to the property's roof and a denial of benefits, Mr. Milazzo sued Defendants. Because Mr. Milazzo has failed to correct the pleading deficiencies which subjected his original complaint to dismissal, his amended complaint is also due to be dismissed, this time with prejudice. Accordingly, Defendants' motion to dismiss (Doc. 38) is **GRANTED**.

## BACKGROUND

In 2005, Mr. Milazzo spoke with Liberty Mutual agents about purchasing a property insurance policy, which was ultimately issued to him by First Liberty.

(Doc. 37 at 2–4, ¶¶ 17–20, 27–29.)[1] At the time he obtained the policy, Mr. Milazzo notified the Liberty Mutual agents that his property was residential and owned in fee simple. (Id. at 3, ¶ 22.) The agents assured him that the policy would cover the property for perils such as wind and storm damage to the property, including the roof system. (Id. at 3, ¶ 25.) Relying on those representations, Mr. Milazzo purchased insurance from First Liberty to cover the property against wind and storm damage. (Id. at 4, ¶ 27.)

The insurance policy was renewed each year from 2006 through 2018. (Id. at 4, ¶ 31.) Upon receiving the renewal policies, Mr. Milazzo called Liberty Mutual to confirm that the renewal policy covered the roof system of the property against all perils, including hurricane and wind damage. (Id. at 4, ¶ 35.) Each time Mr. Milazzo called, the Liberty Mutual on-call agent represented that the policy covered such damage. (Id. at 5, ¶ 37.)

In 2019, Mr. Milazzo became aware of roof damage sustained from severe storm and other wind forces, necessitating a full roof replacement. (Id. at 5, ¶¶ 39–42.) Mr. Milazzo reported a claim to Defendants. (Id. at 5, ¶ 43.) Liberty Mutual

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this standard, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

informed him that it "wrongly secured insurance from LIBERTY with [t]he [p]roperty treated as a condominium property rather than as a private, single-family residential property owned in fee simple by [Mr. Milazzo]." (Id. at 6, ¶ 48.) First Liberty did not provide coverage for the damage to the roof. (Id. at 6, ¶ 50.)

Mr. Milazzo filed suit in Florida state court, raising six identical claims against each Defendant: fraud and misrepresentation (Counts I, VII); fraud in the inducement (Counts II, VIII); common law deceit (Counts III, IX); breach of fiduciary duty (Counts IV, X); rescission of contract (Counts V, XI); and exploitation of the elderly (Counts VI, XII). (Doc. 3; Doc. 18 at 5, 11.) Defendants removed the action to this Court based on diversity jurisdiction. (Doc. 1.) On Defendants' motion to dismiss, Mr. Milazzo's complaint was dismissed with leave to correct several pleading deficiencies. (Docs. 15, 34.)[2]

Mr. Milazzo filed an amended complaint, raising eleven claims against Defendants: fraud and misrepresentation (Counts I, III); fraud in the inducement (Counts II, IV); breach of fiduciary duty (Counts V, VI); negligent misrepresentation (Counts VII, VIII); and, in the alternative against First Liberty, rescission of

---

[2] In his original complaint, Mr. Milazzo alleged the same conduct as to both First Liberty and Liberty Mutual, explaining that he "does not have a copy of the insurance policy" and that "[u]pon a sufficient demonstration that Liberty Mutual is not the insurer who issued the subject policy and that the insurance agent who sold the policy was not an employee or agent of Liberty Mutual, [he] will dismiss Liberty Mutual as a party defendant." (Doc. 18 at 5.) Indeed, a parent is not liable for the acts or liabilities of a subsidiary. See Molenda v. Hoechst Celanese Corp., 60 F. Supp. 2d 1294, 1300 (S.D. Fla. 1999); CMR Construction & Roofing LLC v. Liberty Mut. Ins. Co., No. 2:19-cv-809-FtM-38NPM, 2020 WL 89586, at *1 (M.D. Fla. Jan. 7, 2020) (dismissing lawsuit against Liberty Mutual where policy was issued by Liberty Mutual Fire Insurance Company).

contract based on a unilateral mistake (Count IX), rescission of contract based on mutual mistake (Count X), and reformation of contract based on unilateral or mutual mistake (Count XI). (Doc. 37.) Defendants now move to dismiss Mr. Milazzo's amended complaint with prejudice. (Doc. 38.) Mr. Milazzo filed a response in opposition, requesting that any dismissal be with leave to amend. (Doc. 39 at 1–2.)

## DISCUSSION

Because Mr. Milazzo has failed to correct the several deficiencies in his pleading, the amended complaint is due to be dismissed. First, as with his original complaint, Mr. Milazzo has not pleaded his fraud claims with the particularity required by Federal Rule of Civil Procedure 9(b). Similarly, several counts, including his newly raised claims, fail to state a claim entitling him to relief. And as to the breach of fiduciary duty claims, no allegations establish that Defendants owed Mr. Milazzo a fiduciary duty. In light of Mr. Milazzo's prior opportunities to correct these deficiencies and the futility of any amendment, leave to amend is unwarranted.

**I.     All counts, excluding the breach of fiduciary duty counts, do not comply with Rule 9(b).**

It is undisputed that Counts I, II, III, IV, VII, VIII, IX, X, and XI are premised on fraud and are subject to Federal Rule of Civil Procedure 9(b)'s requirement that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b);

4

(Doc. 38 at 2; Doc. 39 at 4.)[3] The claims must therefore set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006) (quotation omitted).

Although Mr. Milazzo has provided additional factual allegations, his amended complaint still fails to satisfy Rule 9(b)'s heightened pleading requirement. First, the complaint does not specify which statements were made in what documents or oral representations or what omissions were made. In other words, Mr. Milazzo has not pleaded precisely "the words used" or "facts to show that the statements (or omissions) were material and factual—not opinions on future events or promises of future actions—and the manner in which the statements (or omissions) were misleading." Swipe for Life, LLC v. XM Labs, LLC, No. 10-22337-

---

[3] Mr. Milazzo previously contended that his rescission counts were not subject to Rule 9(b). (Doc. 18 at 11.) As this Court noted, however, Mr. Milazzo's rescission of contract claims are premised on alleged fraudulent misrepresentations. See Gen. Star Indem. Co. v. Triumph Hous. Mgmt., LLC, No. 1:18-cv-1770-TCB, 2018 WL 8949452, at *4 (N.D. Ga. Nov. 9, 2018) ("Because [the] rescission claim is based on alleged fraud, it must comply with the heightened pleading standards for fraud-based claims set forth in Rule 9(b)."); Douse v. Boston Sci. Corp., 314 F. Supp. 3d 1251, 1264 (M.D. Fla. 2018) (negligent misrepresentation claims); Richmond Manor Apts., Inc. v. Certain Underwriters at Lloyd's London, No. 09-60796-CIV, 2011 WL 13175618, at *2 (S.D. Fla. Feb. 28, 2011) (reformation claims).

CIV, 2011 WL 13220765, at *3 (S.D. Fla. Aug. 19, 2011). Instead, he alleges that Liberty Mutual agents made vague representations as to whether the policy would cover the property against damage from perils. (Doc. 37 ¶¶ 25, 35–37); see Johnson v. Amerus Life Ins. Co., No. 05-61363-CIV, 2006 WL 3826774, at *4 (S.D. Fla. Dec. 27, 2006) (dismissing claim with vague and conclusory allegations).

Additionally, the alleged statements or omissions must be "attributed to a specific person," not a corporate entity. See Travelers Prop. Cas. Co. of Am. v. Charlotte Pipe & Foundry Co., No. 6:11-cv-19-Orl-28GJK, 2012 WL 983783, at *6 (M.D. Fla. Mar. 22, 2012) (emphasis added). Absent other identifying information, Mr. Milazzo's allegations that Defendants' "on-call telephone insurance agents" made the representations are insufficient. (Doc. 37 ¶¶ 25, 35); see Fogle v. IBM Corp., 8:19-cv-2896-T-33JSS, 2020 WL 1873567, at *5 (M.D. Fla. Apr. 15, 2020) (finding insufficient allegations that statements were made by "corporate executive recruiter" and company "vice president").

Indeed, Mr. Milazzo does not allege with requisite specificity the time of such statements. Although he adds in his amended complaint that he initially called Liberty Mutual's Tampa branch in June or July 2005 and, following the policy's renewal, "during the renewal month after payment," he acknowledges that he "does not have specific knowledge of the exact date of his calls to the Tampa office of [Liberty Mutual]." (Doc. 37 ¶¶ 20, 26, 35–36.) This broad range of possible dates, over the course of several years, is inconsistent with the heightened pleading standards of Rule 9(b). See Fogle, 2020 WL 1873567, at *5 (noting lack of clarity as

6

to "when in [the alleged] four-month time span each of the misrepresentations was made"); see also Zarrella v. Pac. Life Ins. Co., 755 F. Supp. 2d 1218, 1224 (S.D. Fla. 2010) (dismissing complaint that failed "to identify the time and place of the alleged statements regarding the insurance policies, who made those statements, and what information [the defendant] had or could have had in its possession to indicate that the statements were false when made").

Mr. Milazzo's assertion that "upon information and belief, the date and time of the calls and the identity of the specific agents will be obtained through discovery" is unavailing. (Doc. 37 ¶¶ 26, 36); Inman v. Am. Paramount Fin., 517 F. App'x 744, 748–49 (11th Cir. 2013) (noting that Rule 9(b) is a "pleading standard[] which appl[ies] before the discovery period begins"); D.H.G. Properties, LLC v. Ginn Companies, LLC, No. 3:09-cv-735-J-34JRK, 2010 WL 5584464, at *6 (M.D. Fla. Sept. 28, 2010) (observing that allegations of fraud "cannot be based merely on information and belief").

Accordingly, Rule 9(b) requires dismissal of the claims premised on fraud raised in Counts I, II, III, IV, VII, VIII, IX, X, and XI.

## II. Even if Rule 9 is satisfied, several of the claims premised on fraud are due to be dismissed for failure to state a claim.

Several of Mr. Milazzo's claims are due to be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court will address them in turn.

**Counts I and III: Fraud and Misrepresentation**

A claim of fraud requires "(1) that there was a false statement concerning a specific material fact; (2) that the representor knew, or should have known, that the representation was false; (3) an intention that the representation induce another to act on it; and (4) a consequent injury to the party acting in justifiable reliance on the representation." Haskin v. R.J. Reynolds Tobacco Co., 995 F. Supp. 1437, 1439 (M.D. Fla. 1998).

As noted, the amended complaint does not include the details as to any false statements or omissions. (Doc. 37 ¶¶ 24–25, 37.) And rather than explain First Liberty's basis to decline coverage in detail, Mr. Milazzo merely alleges that First Liberty "declined to provide coverage . . . based on the terms of renewal policy in effect at the time that the damage occurred to [t]he [p]roperty from the hurricane and severe wind peril." (Id. at 6, ¶ 50.)

To the extent Mr. Milazzo contends that the terms of the policy conflicted with oral representations made to him, "under Florida law, a party is not justified in relying on oral representations that conflict with the terms of a subsequent written contract." GEICO Marine Ins. Co. v. Baron, 426 F. Supp. 3d 1263, 1265 (M.D. Fla. 2019) (quotation omitted). "Where the alleged misrepresentation contradicts a subsequent written contract . . . reliance upon the fraudulent representation is unreasonable as a matter of law." Concierge Servs., Inc. v. Flagler Holdings VI Beta Inc., No. 21-20746-CV, 2021 WL 3934225, at *5 (S.D. Fla. May 27, 2021) (quotation omitted); see also Englezios v. Batmasian, 593 So. 2d 1077, 1078

(Fla. 4th DCA 1992) ("A party may not recover in fraud for an alleged oral misrepresentation which is adequately dealt with in a later written contract."). Indeed, an insured is charged to learn and know the contents of an insurance policy. Griffin Bros. Co., Inc. v. Mohammed, 918 So. 2d 425, 431 (Fla. 4th DCA 2006); Sprinkler Repair Inc. v. Ohio Sec. Ins. Co., No. 6:20-cv-1932-ACC-LRH, 2021 WL 4487902, at *8 n.16 (M.D. Fla. Sept. 30, 2021).

Here, even if Mr. Milazzo thought that, based on oral representations, the insurance policy would cover wind or storm damage to his roof, the written policy was thereafter issued and renewed numerous times. (Doc. 37 at 4, ¶ 31; Doc. 15-1.)[4] Accordingly, to the extent he contends that the terms of the policy conflicted with oral representations made to him, it appears that he could not have justifiably relied on an oral representation made prior to the issuance of the policy. In all events, and even if the basis of the denial of benefits was an improper designation of the property as a condominium property, dismissal is warranted for failure to comply with Federal Rule of Civil Procedure 9(b).

---

[4] Mr. Milazzo does not dispute that this Court may consider the written insurance policy, which is referred to in the complaint, central to Mr. Milazzo's claims, and of undisputed authenticity. See Roberts v. Carnival Corp., 824 F. App'x 825, 826 (11th Cir. 2020). That written policy does include provisions relating to perils such as windstorms and hurricanes, but no party discusses how these provisions relate to Mr. Milazzo's claims or the denial of benefits. (Doc. 15-1 at 12, 34, 53.) Notably, although Mr. Milazzo mentions "fraud in the inducement for breach of contract" in the fraud in the inducement claim asserted in Count II, he does not expressly raise a breach of contract claim or mention any such claim in his response. (Doc. 37 at 8, ¶ 62; Doc. 39.)

**Counts II and IV: Fraud in the Inducement**

"The elements of a claim for fraud in the inducement in Florida are: (1) that the defendant misrepresented a material fact; (2) that the defendant knew or should have known that the statement was false; (3) that the defendant intended that the representation would induce the plaintiff to enter into a contract or business relation; and (4) that the plaintiff was injured by acting in justifiable reliance on the misrepresentation." GEICO Marine Ins. Co., 426 F. Supp. 3d at 1265.  It is unclear how Counts II and IV differ from Counts I and III.  In all events, to the extent Mr. Milazzo contends that the terms of the policy conflicted with oral representations made to him, Counts II and IV are due to be dismissed for the same reasons.  Topp, Inc., 513 F. Supp. 2d at 1348 ("No action for the tort of fraud in the inducement will lie where the alleged fraud contradicts a subsequent written contract.").

Defendants also contend that the fraud in the inducement claim against Liberty Mutual fails because, although Liberty Mutual made the alleged misrepresentations, it was not a party to the underlying insurance contract between First Liberty and Mr. Milazzo.  (Doc. 37 ¶¶ 7, 22–25, 28, 35; Doc. 15-1.)  "Under Florida law, a party cannot allege fraud in the inducement based upon misrepresentations of a third party who is not a party to the contract that the parties allegedly entered into based upon said misrepresentation." RBC Bank (USA) v. Dental Care All., LLC, No. 8:11-cv-1950-T-AEP, 2012 WL 13106331, at *3 (M.D. Fla. Mar. 15, 2012) (citation omitted).  In all events, even if the alleged

10

agency relationship between the Defendants defeats this contention (see Doc. 39 at 13), Counts II and IV are dismissed for noncompliance with Rule 9(b).

**Counts VII and VIII: Negligent Misrepresentation**

A negligent misrepresentation claim requires: (1) a misrepresentation of material fact; (2) the representor made the representation without knowledge as to its truth or falsity, or under circumstances in which he ought to have known of its falsity; (3) the representor intended that the misrepresentation induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation. Souran v. Travelers Ins. Co., 982 F.2d 1497, 1503 (11th Cir. 1993). In support of this claim, Mr. Milazzo alleges that Defendants misrepresented that the policy "provided sufficient adequate coverage for all parts of The Property including the roofing system." (Doc. 37 ¶¶ 124, 133.)

As noted, to the extent Mr. Milazzo contends that the terms of the policy conflicted with oral representations made to him, "[w]here the alleged misrepresentation contradicts a subsequent written contract . . . reliance upon the fraudulent representation is unreasonable as a matter of law." Concierge Servs., 2021 WL 3934225, at *5 (quotation omitted). Further, to the extent Mr. Milazzo alleges that Defendants made representations regarding the status of the property "as a condominium property subject to a condominium association's obligation to repair common areas such as roof systems," there are no supporting factual details, and the allegations do not establish that he was unable to independently investigate this information. (Doc. 37 ¶¶ 119, 128.)

11

Indeed, "a negligent misrepresentation claim must fail if an investigation by the recipient of the information would have revealed the falsity of the communication." Douse v. Boston Sci. Corp., 314 F. Supp. 3d 1251, 1264 (M.D. Fla. 2018). In other words, "a recipient of an erroneous representation cannot hide behind the unintentional negligence of the misrepresenter when the recipient is likewise negligent in failing to discover the error." Id. (quotation omitted); Concierge Servs., 2021 WL 3934225, at *5. An investigation by Mr. Milazzo could have revealed whether his property was a single-family residence or a condominium property subject to a condominium association's obligation to repair roof systems. In fact, he acknowledges that "[a]t all times, The Property has been identified in public records as a private, single-family, residential golf course property owned in fee simple." (Doc. 37 at 3, ¶ 23.)

In all events, Counts VII and VIII are dismissed for noncompliance with Rule 9(b).

**Count IX: Rescission Based on Unilateral Mistake**

"In order to state a claim for rescission, a party must allege six elements: (1) the character or relationship of the parties, (2) the making of the contract, (3) the grounds for rescission, (4) that the party seeking rescission has done so and informed the other party to the contract, (5) if the rescinding party has received benefits from the contract, that the party has offered to restore the benefits if possible, and (6) that no adequate remedy is available at law." SureTec Ins. Co. v. Nat'l Concrete Structures, Inc., No. 12-60051-CIV, 2012 WL 12860161, at *4 (S.D.

Fla. July 3, 2012).  As Defendants observe, although Mr. Milazzo alleges in conclusory terms that he did not receive any benefit from the insurance policy, the insurance policy nonetheless provided insurance coverage for a period of thirteen years.  (Doc. 37 ¶¶ 31, 143–44, 157–58.)  Mr. Milazzo does not allege, for example, that the insurance policy provided no coverage or was otherwise invalid based on an improper condominium designation.

Further, to set aside a contract based on a unilateral mistake, a plaintiff must also establish that (1) the mistake was not the result of an inexcusable lack of due care; (2) denial of release from the contract would be inequitable; and (3) the other party to the contract has not so changed its position in reliance on the contract that rescission would be unconscionable.  See DePrince v. Starboard Cruise Servs., Inc., 271 So. 3d 11, 20 (Fla. 3d DCA 2018).  Here, the allegations do not appear to establish that the mistake was not the result of an inexcusable lack of due care because, as mentioned, "Florida law imposes a duty upon an insured to learn and know the contents of his insurance policy upon its delivery."  Griffin Bros., 918 So. 2d at 431.  A failure to learn and know the contents of the insurance policy over a period of thirteen years would appear to indicate an inexcusable lack of due care.

In all events, this claim, along with the claim for rescission based on mutual mistake raised in Count X and reformation in Count XI, is dismissed for noncompliance with Rule 9(b).

### III. Mr. Milazzo does not establish a fiduciary relationship to support the breach of fiduciary duty counts.

The breach of fiduciary duty claims raised in Counts V and VI are due to be dismissed because Mr. Milazzo has, again, failed to adequately allege a fiduciary relationship. "The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." Border Collie Rescue, Inc. v. Ryan, 418 F. Supp. 2d 1330, 1342 (M.D. Fla. 2006).

Mr. Milazzo alleges that First Liberty was the insurer of his property. However, a fiduciary duty does not exist in an arm's length transaction. See Mac-Gray Servs., Inc. v. DeGeorge, 913 So. 2d 630, 633 (Fla. 4th DCA 2005). More specifically, unlike in the context of a third-party claim, there is no fiduciary relationship between an insurer and an insured under Florida law. See Hogan v. Provident Life & Acc. Ins. Co., 665 F. Supp. 2d 1273, 1286 (M.D. Fla. 2009); see also Doe v. Allstate Ins. Co., 653 So. 2d 371, 374 (Fla. 1995) (insurer in defending a claim has "a fiduciary duty requiring the exercise of good faith").

By contrast, insurance brokers may owe a fiduciary duty to their customers. See Insurance Agent and Broker Liability, 40 Tort Trial & Ins. Prac. L.J. 1, 11–12 (2004); Tiara Condo. Ass'n, Inc. v. Marsh, USA, Inc., 991 F. Supp. 2d 1271, 1279–80 (S.D. Fla. 2014) ("Florida law has long recognized that an insurance broker owes a fiduciary duty of care to the insured." (emphasis added)). But Mr. Milazzo cites no authority in support of the proposition that, under Florida law, an insurance agent owes a fiduciary duty to an insured, at least in the circumstances presented here.

14

See, e.g., Insurance Agent and Broker Liability, 40 Tort Trial & Ins. Prac. L.J. 1, 12 (collecting cases and observing that "there simply is no fiduciary relationship between an insurer or its agents and an insured or applicant for coverage").[5]

As the Florida Supreme Court has explained:

> A representative of the insured is known as an "insurance broker." A broker represents the insured by acting as a middleman between the insured and the insurer, soliciting insurance from the public under no employment from any special company, and, upon securing an order, places it with a company selected by the insured, or if the insured has no preference, with a company selected by the broker. In contrast, an "insurance agent" represents an insurer under an exclusive employment agreement by the insurance company. . . .

Essex Ins. Co. v. Zota, 985 So. 2d 1036, 1046 (Fla. 2008).

Here, the amended complaint confusingly alleges that First Liberty was both "the insurance broker and insurer." (Doc. 37 at 12, ¶ 97.) The amended complaint also alleges that Liberty Mutual acted as an "insurance broker." (Id. at 13, ¶ 106.) These allegations, however, are merely legal conclusions, and Mr. Milazzo provides no factual allegations supporting a finding that either Defendant acted as an insurance broker or otherwise owed him a fiduciary duty. See Ashcroft v. Iqbal, 556

---

[5] In fact, he cites no authority as to these claims at all. (Doc. 39 at 18.) To be sure, an insurance agent may be liable to a customer, through breach of contract or negligence, for the failure to perform an agreement to procure insurance coverage or properly advise the customer. See, e.g., Tiara Condo. Ass'n, Inc., 991 F. Supp. 2d at 1280; Wachovia Ins. Servs., Inc. v. Toomey, 994 So. 2d 980, 990 (Fla. 2008); Warehouse Foods, Inc. v. Corp. Risk Mgmt. Servs., Inc., 530 So. 2d 422, 423 (Fla. 1st DCA 1988); Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc., 607 F.3d 742, 748 (11th Cir. 2010), certified question answered, 110 So. 3d 399 (Fla. 2013) (collecting cases). The issue before the Court, however, is whether an insurance agent owes a customer a fiduciary duty in these circumstances.

15

U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

To the contrary, the amended complaint does not plausibly allege that First Liberty was Mr. Milazzo's insurance broker because First Liberty <u>issued</u> the insurance policy. As noted, "[a] broker represents the insured by acting as a middleman between the insured and the insurer." <u>Zota</u>, 985 So. 2d at 1046. Furthermore, the amended complaint contradictorily alleges that Liberty Mutual was the <u>agent</u>, not the broker, of First Liberty. (Doc. 37 ¶¶ 87, 109, 110.)

At bottom, the amended complaint does not allege sufficient facts to establish that either Defendant "solicit[ed] insurance from the public under no employment from any special company, and, upon securing an order, place[d] it with a company selected by the insured, or if the insured has no preference, with a company selected by the broker." <u>Zota</u>, 985 So. 2d at 1046. Instead, Mr. Milazzo's allegations appear to refute his legal conclusion that either Defendant acted as an insurance broker. For example, the amended complaint alleges that Mr. Milazzo spoke with alleged agents of Defendants by calling "the Tampa branch" of Liberty Mutual to purchase "Liberty Mutual homeowner's insurance" based on his "expressed and demonstrated preference for Liberty Mutual insurance policies." (Doc. 37 ¶¶ 20, 99.) He further alleges that First Liberty "is a wholly-owned subsidiary" of Liberty Mutual, and that Liberty Mutual acted as an agent "under an employment agreement to sell

16

[First Liberty's] homeowner's insurance products to homeowners in the state of Florida." (Id. ¶¶ 7, 109.)[6]

In all events, and despite an opportunity to amend his pleading, Mr. Milazzo's allegations do not establish that Defendants served as his insurance broker. Accordingly, absent a fiduciary duty owed to Mr. Milazzo, the breach of fiduciary duty claims asserted in Counts V and VI are due to be dismissed.

### IV. Granting leave to amend is unwarranted.

Defendants contend that dismissal of Mr. Milazzo's claims with prejudice is warranted "[b]ecause this Court already gave Plaintiff an opportunity to amend, and the amended complaint still does not state a claim for relief." (Doc. 38 at 1.) Mr. Milazzo requests leave to amend, arguing as follows:

> [Mr. Milazzo] has not abused the right of amendments by dilatory action, bad faith or repeated failure to cure deficiencies in the complaint. Second the first-amended complaint contains several new causes of action which have never been the subject of amendment. Third, amendment is not futile as [Mr. Milazzo] believes is demonstrated by facts asserted in the complaint and by the arguments against dismissal set forth herein. Finally, there is no particular prejudice to Defendants in allowing further amendment.

(Doc. 39 at 1–2.) The Court is not persuaded that leave to amend is warranted.

As an initial matter, rather than file a motion for leave to amend, Mr. Milazzo seeks leave in his response to a motion to dismiss. (Id.) The Eleventh

---

[6] Tellingly, in his response to the motion to dismiss, Mr. Milazzo observes that he "alleged that because First Liberty is a wholly-owned subsidiary of Libert [sic] Mutual, the entities are the same entity as they relate to the contract First Liberty issued to Milazzo. Milazzo alleged that, in effect, First Mutual [sic] sold its own product to Milazzo in the form of a First Liberty policy." (Doc. 39 at 13.)

17

Circuit has explained that "plaintiffs cannot amend their complaint through a response to a motion to dismiss." Burgess v. Religious Tech. Ctr., Inc., 600 F. App'x 657, 665 (11th Cir. 2015) (citation omitted). Instead, "the proper method to request leave to amend is through filing a motion, and such motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." Id. (citation omitted). Second, Defendants are correct that Mr. Milazzo has already been provided an opportunity to amend his complaint. In its prior order, this Court outlined the several pleading deficiencies in Mr. Milazzo's original complaint. (Doc. 34.) Despite his additional allegations, Mr. Milazzo has failed to adequately correct those deficiencies.

Finally, any amendment would be futile. See Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001). Indeed, Mr. Milazzo does not specify what additional allegations he could include in an amendment to avoid dismissal. His contention that "amendment is not futile as [he] believes is demonstrated by facts asserted in the complaint and by the arguments against dismissal set forth herein" is unavailing. (Doc. 39 at 2.) As noted, the facts alleged in the complaint fail to comply with Federal Rule of Civil Procedure, and dismissal is appropriate.

To the extent Mr. Milazzo requests leave to "bring forwarded [sic] the fraud allegations within those separately pled causes of action" of negligent misrepresentation, rescission, and reformation, he does not explain in what ways any additional allegations will differ from the allegations supporting his other fraud claims or otherwise comply with Federal Rule of Civil Procedure 9(b). (Id.)

Moreover, he raised rescission claims in his original complaint. (Doc. 3 at ¶¶ 42–50, 77–85.) In summary, granting leave to amend is unwarranted.

## CONCLUSION

For the reasons above, Defendants' motion to dismiss (Doc. 38) is **GRANTED**. Mr. Milazzo's First-Amended Complaint (Doc. 37) is **DISMISSED with prejudice**. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**ORDERED** in Fort Myers, Florida, on June 15, 2022.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE